---

(No. 13883.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAY A. COTELL, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*testimony of accomplice should be closely scrutinized.*  The testimony of an accomplice is competent and a conviction may be sustained thereon, but such testimony should be submitted to the closest scrutiny.

2. SAME—*when a new trial should be granted on newly discovered evidence.*  While courts do not favor new trials on newly discovered evidence, yet where it is shown that the new evidence is not cumulative in regard to the particular point to which it relates and has a value which could not have been foreseen, strengthens the conviction of the court that justice has not been done and is likely to change the result upon a re-trial, courts will not hesitate to grant a new trial on account of new evidence.

3. SAME—*what is cumulative evidence.*  As a general rule cumulative evidence is additional evidence of the same kind and to the same point, but this rule must not be understood as precluding a new trial in every case where the testimony relates to a point contested on the trial.

4. SAME—*when new evidence to impeach testimony of an accomplice is not necessarily cumulative.*  Newly discovered evidence showing that the principal witness for the State, who was a co-defendant, testified falsely concerning certain material matters is not necessarily cumulative evidence, even though her testimony as to other material matters and her veracity may have been impeached by the evidence on the trial; and where the People's case rests upon the truth of the testimony of such witness, newly discovered evidence that she testified falsely in material matters should be considered by a jury upon a new trial.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

AMOS W. MARSTON, and C. RICHARD BETTS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was charged with the crime of confidence game under an indictment returned in the criminal court of Cook county. The indictment consisted of four counts, all but the first of which, however, were either quashed or *nolle prossed.* The charge in the first count of the indictment, on which the plaintiff in error was convicted, was, that he and Mary C. Anderson obtained certain bonds, jewelry and other valuables, the goods and property of the Englewood Safety Deposit Company, a corporation, by means and by use of the confidence game. Mary C. Anderson, co-defendant, was granted a separate trial and testified on this trial as a witness for the State.

It appears from the evidence that Martha Cline Cotell, wife of plaintiff in error, had rented a safety deposit box in the vault of the Englewood Safety Deposit Company, the number of this box being 748, and that in it she kept the bonds and other property alleged to have been taken by Mary C. Anderson. It appears also from the evidence that Mary C. Anderson opened an account with the Englewood State Bank by depositing therein the sum of one dollar under the name of Mr. and Mrs. C. C. Anderson. The testimony of certain employees of the bank is that in

the early part of January, 1919, she came to the bank and represented herself as having been recently married; that her former name was Martha Cline Cotell, and that she at that time presented a receipt issued by the deposit company for the box rent of safety deposit box No. 748, stating that she had lost her key to the box and was anxious to secure from the box a certain brown envelope so she might obtain the papers contained in it, as she desired to use them. She was told that the box would have to be drilled open, and there would be some delay and an expense of $2.50 incident to opening the box in this manner, which she agreed to pay. The testimony of the bank employees also is that after she had shown them the receipt and given them the number she tore up the receipt and threw it into the waste basket; that on or about January 24 the box was opened in her presence and was turned over to her. No one connected with the bank testified as to what she took from the box, further than that they saw her with a brown envelope. She had the box in her possession and had opportunity to go through it and take from it what she desired, as in handling the box she was not in any way interfered with or watched by employees of the bank. The testimony further shows that after she had taken from the box what she desired it was again sealed in her presence and placed in the vault, and she was informed that it would have to remain sealed until new keys could be made for her, which was afterward done. It appears from other of the State's witnesses that she sold certain bonds, which she said came from this safety deposit box, for the sum of $1527, through the assistance of the witness Westbrook, an attorney. After the sale, on the 24th day of January, she deposited $500 of the proceeds thereof in the Englewood State Bank. There is no explanation by the officers or employees of the bank as to how she succeeded in passing herself off to them as Martha Cline Cotell, though officers of the bank and different employees testified that they knew Martha Cline Co-

tell and knew that she had an account there and a safety deposit box, and though the record does not show that any of them had any independent knowledge that her box was numbered 748. Mary C. Anderson is a colored woman. Martha Cline Cotell is a white woman. Plaintiff in error is a white man. There was no disguise on the part of Mary C. Anderson which deceived any officer or employee of the bank, as all of those testifying admitted that they knew that the person Mary C. Anderson, who said she was formerly Martha Cline Cotell, was a colored woman. Some time after this, Martha Cline Cotell, the real owner of the contents of the box, came to the bank and asked to be admitted to the contents of box No. 748. It was then discovered for the first time that Mary C. Anderson had procured these bonds under the fraudulent representation that she was Martha Cline Cotell, the lessor of the safety deposit box. Upon her arrest she confessed to having procured these bonds by fraud and implicated the plaintiff in error as being with her in the scheme to defraud. As a result of her statement to the officers the plaintiff in error, who was then employed in Oakland, California, was arrested and returned to this State.

On the trial of the cause Mary C. Anderson turned State's evidence, and testified that for more than six years she had known plaintiff in error; that she first met him on a street car, where he made lascivious advances toward her; that she afterward met him in a park, and that for a period of six years following she frequently met him, either at his office, or at 3449 Prairie avenue, or at 3257 South Park avenue; that during that time her name was Mary Cottrell; that later she married C. C. Anderson, a colored man, whereupon her relations with plaintiff in error ceased; that he thereafter, however, sought frequently to see her, and finally proposed over the telephone the scheme by which the bank in this case was defrauded into permitting her to take the contents of the safety deposit box of the plaintiff

in error's wife, Martha Cline Cotell, saying that he would bother her no more if she would consent to do this for him; that she thereafter did consent, and that at his direction she made the deposit of one dollar; that he gave her the receipt for box 748 and told her how to represent herself as having formerly been Martha Cline Cotell; that she followed his directions, and that after she had secured the bonds and sold them with the assistance of the colored attorney, Westbrook, she gave to plaintiff in error $500 out of the proceeds of the bonds and some checks signed by her, by means of which he might draw out of the Englewood State Bank $400 of the $500 which she deposited there on January 24 to her own account. She testified that she met the plaintiff in error at a certain restaurant known as Elite No. 1, a little after eight o'clock on the evening of January 23; that she saw him again on the evening of January 24, when she gave him a portion of the money she received from the bonds.

Plaintiff in error denied having known the co-defendant, and denied the statements in her testimony concerning any connection with the defrauding of the bank or previous acquaintance with her. He denied having seen her either the 23d or 24th of January, 1919. It is shown by abundance of evidence that on the 23d of January, at the time when she details having met him at the restaurant Elite No. 1 he was in attendance upon ceremonies of installation at a lodge to which he belonged. It is also shown by the testimony of a witness, apparently disinterested, that on the evening of the 24th, at the time when she states she met him and gave him the money, he was at the house of the witness, in the neighborhood in which he resided. Many witnesses testified to his good reputation for truthfulness, honesty and integrity in the neighborhood in which he resided. It appears that he has been in business in the city of Chicago for many years; that a short time after the defrauding of the bank he received employment from a man by the name

of Drake, at whose direction he went to San Francisco, California, and meeting Drake or his representative there, was transferred to Oakland, California, where he went to work. It is evident from the record that there was no attempt to conceal the matter of his going, as numerous postcards with his name signed to them were sent back to his family and friends, nor was there any attempt to conceal his whereabouts while there.

The testimony of the witness Mary C. Anderson is not only an unusual story but she proved to be an extremely unreliable witness. She not only contradicts herself but is impeached by other witnesses in material matters to such a degree that her testimony is of a very unsatisfactory character. There is no testimony in the record save hers as to how she obtained the number of the safety box of Martha Cline Cotell. She testified that she had one of the safety deposit company's receipts, and that she tore it up and threw it into the waste basket. In this she is corroborated by employees of the deposit company, but upon the trial of the cause all of the receipts issued to Mrs. Cotell covering the time from the first rental of the box by her up to the time of the trial were produced and put in evidence, so it is physically impossible that she should have presented the deposit company's receipt issued to Mrs. Cotell for rent at the time she was admitted to the box. There is no evidence in the record, except her statement, that in any way tends to prove that she got this information from the plaintiff in error. There is nothing in the record, aside from her testimony, to indicate that her possession of that number and the information concerning the contents of the box may not have been procured in some other way. There is no testimony in the record that plaintiff in error knew the number of this box or its contents. It is conclusively shown by the introduction in evidence of all the receipts issued by the deposit company to Mrs. Cotell that the Anderson woman could not have had one of such receipts of the bank

and could not have there torn it up, as testified to by her and the bank employees. How she could have secured a form of the deposit company receipts in order to duplicate one issued to Mrs. Cotell is not explained. ˙Certainly there is no evidence that the plaintiff in error had such a receipt blank. She testified that the receipt was signed by Saulsbury, while the evidence shows that he had nothing to do with signing such receipts. That she secured admission to the box and stole the property is evident. As to how she procured this purported receipt and the box number the record is silent save for her testimony.

Of the same character is the proof of the People as to her relations with plaintiff in error. The only testimony in the record, aside from her statement, which in any way tends to connect plaintiff in error with this woman was that of the witnesses Taylor and Coleman. The former was a waiter at a colored restaurant. He testified that on one occasion the Anderson woman gave a party in this restaurant Elite No. 1, where he acted as waiter; that there were six or eight colored people in the party, and that the plaintiff in ˙error was there, he being the only white person in the party; that he had seen him there but once with her; that he had not waited upon them; that the plaintiff in error was so drunk he could not sit in the chair. He admitted on cross-examination that when he had first seen plaintiff in error at the State's attorney's office, after the arrest of plaintiff in error, he had said that was not the man he saw at the restaurant and that afterward he said he was. The testimony for the defense showed that the plaintiff in error is not a drinking man and not one in the habit of using intoxicating liquors. There is much doubt from the testimony of the witness Taylor as to the plaintiff in error being the white man that he saw at this party on the occasion he testified to.

Mrs. Coleman, a negress, testified that plaintiff in error, in company with another white man, came to her house to

see the Anderson woman,—she thinks in March, 1919; that it was just before the Anderson woman ceased living with the witness. She doesn't remember whether it was before or after the woman went to Harrisburg. She testified that while this woman was in Harrisburg the Englewood State Bank called up, and she told them Mary Anderson was in Harrisburg. It is evident that this witness is much confused as to the white men who came to the house. She testifies that one man came with plaintiff in error; also that two detectives came, and that fifty detectives came. There is no claim by the Anderson woman that she ever saw the plaintiff in error in company with another man, and it seems hardly probable that a man having dealings with her of the character she claims he had would go to see her in the company of anyone else. Moreover, if the visit of these two men occurred in March, 1919, plaintiff in error was then employed in Oakland, California.

It will be seen, therefore, that the question of the veracity of the co-defendant, Mary Anderson, was a very important one in the trial of this case. While it is the settled rule that the testimony of an accomplice is competent and that a conviction may be sustained thereon, yet it is likewise the rule that such testimony should be submitted to the closest scrutiny. (*People* v. *McKinney,* 267 Ill. 454; *People* v. *Fox,* 269 id. 300.) On motion for new trial numerous affidavits were offered and examination of witnesses was had. These affidavits set out positive contradiction of many of the statements of Mary Anderson. They show that subsequent to the time of the trial counsel for plaintiff in error had come into possession of testimony and means of showing that at the time when the Anderson woman said she first met plaintiff in error she did not live in Chicago but that she lived in Washington, D. C., under the name of Mary Miles; that she did not come to Chicago for nearly a year after she claims to have become acquainted with plaintiff in error; that after she came to Chi-

cago she was arrested and returned to Washington on the charge of stealing jewelry and money from a certain Chinaman named Moy Sing, for whom she had been working, and that her defense in that case was that she had been told by the Chinaman to steal his own property. The affidavits for a new trial further show as newly discovered evidence that during the latter part of the period testified to by the Anderson woman as occasions when she met plaintiff in error at the home of Ethel Williams, at 3449 Prairie avenue, including January and February, 1919,—the time of the commission of the crime charged,—Ethel Williams was not living at that place. They further show that although the Anderson woman testified that she gave checks to plaintiff in error with which to draw out of the bank $400 which was deposited in the bank by her and that she had nothing further to do with that account, yet she drew checks to the amount of $354 against said deposit in favor of herself and others. These affidavits further show that while she testified that the plaintiff in error had given her a phonograph purchased from the Lyon & Healy Company, the phonograph had been purchased by herself from the Rudolph Wurlitzer Company. These and other facts brought out in affidavits of newly discovered evidence, together with the examination by the court, raise the question as to whether or not the court erred in denying a new trial in order that another jury might hear this additional evidence. The rule is, that when it is shown on motion for new trial that there is newly discovered evidence which is not cumulative, in regard to the particular point to which it relates and the importance of which could not have been foreseen, and such newly discovered evidence strengthens the conviction of the court that justice has not been done, a new trial will be granted for further examination of the case. *Wilder* v. *Greenlee,* 49 Ill. 253; *Cairo and St. Louis Railroad Co.* v. *Schumacker,* 77 id. 583; *People* v. *Wright,* 287 id. 580.

It is contended by the State that the newly discovered evidence is purely cumulative of the claim that Mary C. Anderson is not telling the truth. It is not always easy to determine just what constitutes cumulative evidence. As a general rule it is held to be additional evidence of the same kind and to the same point. This rule, however, must not be understood as precluding a new trial in every case where the testimony relates to a point contested on the trial, for if it did so it would be seldom, if ever, that a new trial could be granted on such grounds.

Mary C. Anderson testified that she gave $500 to plaintiff in error and that she deposited $500 in the bank. There is no evidence in the record that she had any considerable amount of money prior to the theft in question, but the record discloses that she from time to time pawned what jewelry she had for small sums of money. She testified that she had not given any money to her husband for the purpose of buying cars, but it was disclosed on the examination on motion for a new trial that she had given her husband as much as $1100, portions of which were to be used for buying automobiles. This is newly discovered evidence which bears directly upon the question as to whether or not she had given the plaintiff in error $500, or any sum, and if true raises a grave question as to that material part of her testimony.

Defendant in error contends that there has not been proper diligence shown in this case. We are of the opinion that while it may have been that some of the evidence appearing in the affidavits might have been procured on the trial, yet by far the greater portion of the material evidence offered in the affidavits as new evidence could not well have been earlier discovered by plaintiff in error. While it is the general rule, as stated in *People* v. *LeMorte,* 289 Ill. 11, that courts do not favor new trials on newly discovered evidence and that unless the evidence appears to be such as would cause a different verdict new trials should not be

granted, yet where it appears likely that upon a re-trial such new evidence would change the result, courts should not hesitate to grant a new trial on account of new evidence. This case is to be distinguished from *People* v. *LeMorte, supra,* and others where the newly discovered evidence tended to deny the truth of the testimony of one of several witnesses to the same facts, or where the State's case rested upon the testimony of different witnesses and upon facts and circumstances which were not disputed. In this case, if Mary C. Anderson is not telling the truth as to the material parts of the charge against plaintiff in error the entire foundation of the State's case is gone, as the record is wholly barren of other evidence connecting him with the essential elements of the crime. If her evidence is destroyed no judgment of conviction against plaintiff in error can stand. The newly discovered evidence is such, if true, as would tend to destroy her evidence and if believed is likely to change the result on a re-trial. Newly discovered evidence showing that the principal witness for the State has testified falsely concerning certain material matters is not necessarily cumulative evidence, even though her testimony as to other material matters, and her veracity, may have been impeached. Where the State's case rests, as it does here, upon the truth of the testimony of an accomplice, and newly discovered evidence is offered to prove that in material matters she has testified falsely, such new evidence goes to the very foundation of the People's case and should be considered by a jury. The Anderson woman's testimony should be scrutinized closely. She was shown to have testified falsely. Upon examination of her on matters for new trial the trial judge declared that he would not listen further to her varying stories by reason of her untruthfulness. Her story, unimpeached, would be a most unusual one.

The reputation of the plaintiff in error in this case was shown by an abundance of evidence to have been good, and the evidence against him was of such a dubious character

that we feel that justice requires that a new trial should be granted in order that the newly discovered evidence, together with all the evidence to be offered, might be considered by a jury.

Numerous other errors are assigned and urged, but upon examination of the record we are of the opinion that such as are prejudicial will not likely occur on another trial of the case, and discussion of them is therefore unnecessary.

For the reasons herein indicated the judgment of the criminal court of Cook county is reveresd and the case remanded to that court for a new trial.

*Reversed and remanded.*