THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY L. WILLIAMS, Defendant-Appellant.

(No. 74-239;

Third District—April 30, 1975.

STOUDER, P. J., dissenting.

James Geis, of State Appellate Defender's Office, of Ottawa, for appellant.

William O'Connor, State's Attorney, of Cambridge, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a burglary conviction of Jerry L. Williams, in a jury trial in the Circuit Court of Henry County. It is also an appeal from a subsequent order revoking defendant's probation as a result of a prior theft conviction of defendant. A sentence of 20 months to 5 years in the penitentiary was imposed as a result of the burglary conviction and a sentence of from 2 to 6 years was imposed as a result of the prior felony-theft conviction, following the revocation of probation. The court directed that the probation revocation sentence was to run consecutively to the burglary sentence.

Defendant asks for reversal on the basis of two contentions: (1) that the failure of defendant's court-appointed counsel to move for discovery constituted ineffective assistance of counsel, and (2) that the trial court erred in refusing to grant defendant a new trial in light of newly discovered evidence impeaching the credibility of the State's principal witness. A review of pertinent evidence in the case is essential to an understanding of the issues before us.

From the record, it appears that defendant Williams and a companion, Michael Rodak, were at the Martin Engineering Company, where defendant Williams was employed. Rodak testified that Williams gained access to the building by use of a wire and took some tools. Williams denied that he took the tools but stated that Rodak took the tools without

his knowledge. The tools were later found in the premises of Dr. Terry, which were burglarized. Following the visit to the Martin Engineering Company, Rodak and Williams proceeded to Kewanee, and in the early morning hours of October 10, 1973, the Rodak vehicle, in which they were riding, was parked across from the office of Dr. Terry. Rodak testified that he and Williams then proceeded to the building containing the office of Dr. Terry and climbed up on the roof of the building, forced open the skylight, and that Rodak entered the Terry premises through the skylight from the roof of the building. He stated that Williams waited on the roof. Williams said that he remained in the car. A burglar alarm which had been installed in the building was activated by Rodak's entrance, and when Rodak called for help in getting out of the building, Williams helped him out through the skylight to the roof from which they both fled thereafter. Williams stated that he climbed up on the roof and helped Rodak out when he heard the call for help.

The testimony of Rodak was impeached by defendant by admission of a prior burglary conviction into evidence. Rodak also admitted that he was a drug user. The chief of police of Kewanee stated that defendant Williams had voluntarily surrendered himself to police and admitted his "involvement" in the burglary. Defendant also stated that he accompanied Rodak to the scene of the burglary because Rodak claimed there was a party in the area. Defendant, however, admitted that Rodak had talked to him about burglarizing Dr. Terry's office earlier in the day. Defendant also admitted that he went up on the roof of the building, but asserted that he did so to assist Rodak in getting out of the building after the burglar alarm went off and Rodak called for help.

After defendant's trial for burglary he was removed to the Henry County Jail. While he was in the Henry County Jail he received (by way of a jail trusty) two written notes from Michael Rodak, his accomplice in the burglary, who was also the State's principal witness against defendant at the trial. One note from Rodak read:

"Listen, I wouldn't sign a statement on you when they brought me in. I *signed* a statement, however, that said I did it by myself. O'Connor said he was going to subpoena me so I would have to tell the truth. This is the subpoena.

He didn't make any kind of deals with me. I just went over and pleaded guilty to get the fuckin' matter cleared up. You see they had me for burglary out in Colo. and I would have to go out there for maybe 10 yrs. When I came home that night and your'e [sic] things were all gone & you split without telling me a fuckin' thing, I flipped out! I thought the cops had you and I knew I had to split

fast or they would be on my neck. So I busted into the safe to get $ to split.

I've got to serve a 2 to 5 in the pen, now. Only cause I made restitution for the stolen $. It's a bitch we got it for burglary because nothing was taken. I was telling O'Connor you was a good cat, but Watson [unintelligible] and told him you would never change.

Satch"

The other note from Rodak contained a question from defendant Williams and a reply from Rodak in the following language:

"Are you sure you were to [sic] messed up to remember anything? I thought you only had a joint?

J.L.W.

Jerry, I wuz drinkin' firewater & smokin! Anyway I can't remember what really fuckin' happened as to the matter & I told the State Attorney so!

M.R."

Both notes were written after the trial and after the conviction and, also, after Rodak had pleaded guilty.

■■ It is first contended, because defendant's court-appointed attorney did not file a motion for discovery prior to defendant's burglary trial, that defendant was represented by incompetent counsel. On the issue of competent counsel, the defendant cites *People v. Morris*, 3 Ill.2d 437, 121 N.E.2d 810. In that case our supreme court determined that in order to show inadequacy of court-appointed counsel, defendant must show "actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney," and "substantial prejudice resulting therefrom without which the outcome would probably have been different." The same test was reaffirmed by the supreme court in *People v. Stepheny*, 46 Ill.2d 153, 263 N.E.2d 83. The judgment of counsel in trial as to trial tactics does not afford a basis to uphold a contention of incompetency (*People v. Wesley*, 30 Ill.2d 131). While it might be concluded under some circumstances that failure to seek discovery could constitute incompetence of counsel, the facts of each case should be reviewed carefully to determine whether or not there was such competence. As we have also indicated, the court should not conclude that there was inadequate representation, unless counsel demonstrates actual incompetence, as reflected in the record in the cause, in the manner of carrying out his duties as trial attorney. It must also be shown that substantial prejudice would result from any omission of counsel in carrying out his duties but

for which there would probably be a different result in the trial. *People v. Georgev*, 38 Ill.2d 165; *People v. Gray*, 33 Ill.2d 349.

■■ The record indicates that defendant was represented by counsel who handled the procedures in the trial in a manner which was competent and that Williams did not express dissatisfaction with his attorney at any time during the trial. It is apparent from the record and from the cross-examination of Rodak by the attorney for defendant that he had conferred with Rodak as well as with the defendant and was fully aware of the issues of the cause. This complete familiarity obviously may have caused him to conclude that a motion for discovery was unnecessary since he was advised of all the potential issues which might be raised in the case. As a matter of fact, the attorney for defendant forced Rodak to admit, on cross-examination, that he had promised the attorney that he would not testify as against Williams and that Rodak had also promised the father of defendant that Rodak would not testify against Williams.

It was made apparent to the jury from such examination that Rodak had lied to the attorney and to Williams' father or had thought at such time that he would not testify but discovered that he was required to do so by reason of the subpoena. In Rodak's note to defendant, which was submitted as a basis for the motion for a new trial, Rodak indicates that he had tried to keep from having defendant directly involved in the burglary and stated that he had said he did it himself. He also stated in the note, however, that O'Connor, the State's attorney, said he was going to subpoena Rodak "so I would have to tell the truth." He also said, immediately following that statement, "This is the subpoena." Apparently he either sent it or intended to send the subpoena to show defendant why he had to take the stand and tell the truth. He also points out in this statement that O'Connor did not make any kind of deal with him, and he further stated, in the same note, "It's a bitch we got it for burglary because nothing was taken" indicating that he felt that both he and Williams were participants in the burglary.

In the second note, defendant had written an inquiry which asked Rodak whether he was "to messed up to remember anything? I thought you only had a joint?" Rodak apparently replied, as a means of seeking to cooperate with defendant, that "I can't remember what * * * happened as to the matter" and that he told the State's attorney so.

It is obvious that nothing which could have been developed by discovery contended for by defendant could have aided defendant since any statement which had been made to the State's attorney by Rodak in the first instance was preliminary to his final recognition that he had to "tell the truth" after he received the subpoena from the State's attorney.

A determination of the issues as to whether substantial prejudice was

shown to have resulted to defendant by omission of the attorney to seek discovery should be considered in conjunction with the second issue raised by defendant, where he contends that the trial court erred in refusing to grant him a new trial in light of this alleged "newly discovered evidence" which impeached the credibility of the State's witness Rodak. As we have noted, Rodak's credibility had been substantially impeached by the defense attorney, not only in the introduction of his prior record but also by obtaining admission from him that he had told the attorney and the father of the defendant that he would not testify against defendant. The efforts on the part of Rodak to cooperate or explain his position to defendant as disclosed by the two notes obviously indicated that he was telling the truth when he testified in court.

██ A new trial is not warranted unless the new evidence is of such conclusive nature as would probably change the result on retrial. The evidence must be material to the issue and not merely cumulative (*People v. Holtzman*, 1 Ill.2d 562; *People v. Baker*, 16 Ill.2d 364, 374.) The burden is on a person in the position of defendant in this cause to rebut the presumption that a verdict is correct and show that there has been no lack of diligence. Under such circumstances, the question of granting a new trial is within the sound discretion of the trial judge and the exercise of such discretion will not be disturbed unless there is a manifest abuse of discretion. (*People v. Reese*, 54 Ill.2d 51, 59; *People v. Holtzman*, 1 Ill.2d 562.) A distinction is to be drawn between evidence which simply impeaches a witness in the sense that it affects his credibility and evidence that presents a state of facts which differs from that to which the witness testified. (*People v. Holtzman*, 1 Ill.2d 562, 568.) Newly discovered evidence which simply seeks to contradict a witness does not afford a basis for a new trial. Such evidence would only warrant a new trial if there is a sufficient showing that such evidence would probably produce a different result from the one obtained at the trial.

In *People v. Holtzman*, by way of illustration, defendant was charged with receiving stolen property which consisted of seven shirts worth a total of $20 which were sold to defendant. Following the conviction of defendant of receiving stolen property, affidavits as filed by two persons stated that the individual who originally sold the property, stated he sold the shirts to defendant two at a time. If such evidence had been produced at trial, defendant might have been guilty only of the less serious offense of receiving stolen property valued at less than $15. Even in that case, the supreme court held that the new evidence had the sole effect of impeaching a witness and was not sufficient to require the granting of a new trial.

With even a more liberalized standard applied, it is apparent that we

would not be justified in stating that the trial court committed reversible error when it denied defendant's motion for a new trial. The evidence offered as a basis for the new trial was cumulative to the testimony of defendant that he did not participate in the burglary, since its most favorable interpretation would be that Rodak had made a previous statement that he had committed the offense by himself. His note, however, states that he was impelled to tell the truth by reason of the service of the subpoena, even though he had tried to protect defendant. As indicated in *Holtzman*, the type of evidence which could result from the Rodak note would not establish the basis for a new trial. There was nothing presented at the hearing in the trial court other than the notes to which we have made reference. We should also observe that this case is clearly distinguishable from *People v. Cotell*, 298 Ill. 207, cited by defendant. The evidence of impeachment in the *Cotell* case was devastating in nature and was not at all of the character involved in the cause before us, as observed in the *Holtzman* case where the supreme court discussed *Cotell*. The supreme court there stated that *Cotell* went further than mere impeachment, but went to the very foundation of the People's case.

■■ As outlined in the *Holtzman* case, applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts. In order to prevent a possible fraud and imposition, which defeated parties may be tempted to practice as a last resort to escape the consequences of an adverse verdict, the application should always be subjected to the closest scrutiny by the court. The determination of the potential effect of the newly discovered evidence is within the discretion of the trial court and the court's decision on this issue should not be disturbed on appeal unless there is a manifest abuse. See *People v. LeMorte*, 289 Ill. 11.

■■ On the basis of the record before us, therefore, we see substance in the contention of the prosecutor to the effect that to allow a handscribbled note passed between convicted criminals, neither based on affidavits nor supported by extrinsic evidence, as a basis for granting a new trial would open the door for a flood of such notes. Accordingly, in view of the record before us, we find no reversible error either in the denial by the trial court of a new trial or on the issue raised as to competency of defendant's counsel in the trial of this cause.

For the reasons stated, the judgments of the Circuit Court of Henry County are affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I do not agree with the majority of the court. I believe this case should be reversed and remanded for a hearing on the post-trial petition in order that the implications raised by the record in this case can be resolved.

This case presents dual questions relating to newly discovered evidence and competency of counsel. While it is necessary as the majority has done to discuss these questions separately, they are mutually related and dependent. The majority of the court has recognized the mutual dependency of these questions to some extent, but has overlooked the logical consequences flowing from such mutual dependence.

I am entirely in accord with the views of the majority holding that newly discovered evidence will not justify the granting of a new trial where such evidence is merely impeaching evidence of a cumulative nature. However, when the nature of the evidence is combined with the nature of the circumstances preventing such evidence from coming to the attention of the defendant or his attorney, then I do not think that the issues can be resolved by describing such evidence as merely cumulatively impeaching.

I think it can be fairly said from the pleadings and the arguments of the People on this appeal that the notes of the prosecuting witness do refer to exonerating statements which the witness made prior to trial and that in fact exonerating statements of some kind were actually made. However, whether such exonerating statements were written or oral or both or were made to police officers or the State's attorney or both is not revealed by the record. The People's failure to deny the existence of the exonerating statements and at the same time its attempt to minimize their effect without disclosing their nature prevents the evaluation of the nature and effect of such statements on this appeal. While it well may be that the prosecuting witness was telling the truth when at the trial he described defendant's participation in the offense, such a conclusion assumes that any exonerating statements would have been false even though the nature and circumstances of such exonerating statements are not presented by the record.

If, as may be inferred from the notes, the statements were made to someone for whom the prosecution is responsible, then the question arises as to whether such statements could and should have been discovered and produced prior to trial. This, then, is the connection between the second main issue, namely, the claim of incompetency of counsel, because the record fails to disclose that defendant's appointed counsel engaged in any pretrial discovery, made any effort to secure statements of potential witnesses or ascertained the nature of the evidence or testimony which might be presented in court supporting the People's charge. I

must emphasize that this aspect of the case is based on the failure of the record to demonstrate any pretrial discovery activities on the part of defendant's counsel. While it may be necessary at some time in the future to resolve the questions of whether counsel will be deemed incompetent as a matter of law where he fails to engage in pretrial discovery or what should be the consequences of the failure of the record to demonstrate counsel's activity in this regard, I do not believe that these questions need be resolved in this case. Because the notes and the admissions of the People reveal there were pretrial statements exonerating the defendant which could and should have been discovered by pretrial discovery proceedings, and because the record fails to indicate whether such statements were in fact demanded or produced, it is my conclusion that a further hearing is required on the defendant's post-trial petition. The majority opinion assumes from the absence of any findings to the contrary in the record that defendant's counsel did not engage in pretrial discovery and then decides this action was not incompetent because there is some evidence in the record that counsel may have interviewed the prosecuting witness and was acquainted with his pretrial statements but that such witness did not intend to testify against the defendant. If in fact there was no pretrial discovery, such a circumstance would closely approximate incompetent representation as a matter of law, since I do not see how such failure can be justified on any tactical basis or excused as a matter of judgment. It is of course quite possible that any exonerating statements of the witness were made known by the People to defendant's counsel although the circumstances relating to discovery were not made a part of the record. Since I believe a further hearing should be held, whatever deficiencies which may exist in the record may be cured and the inferences which may be drawn from unknown exonerating statements may be refuted. Alternatively, if the exonerating statements had not been requested or produced then I believe the combination of circumstances might well justify granting the defendant a new trial.

In summary, where the record fails to demonstrate that counsel engaged in reasonable pretrial discovery procedures, I do not believe the record is sufficient to support a conclusion defendant was represented by competent counsel, at least where it appears that we are approving his delinquencies in this regard. Where a statement, confession or other evidence could or should have been discovered by appropriate pretrial procedure, the failure to discover such evidence and the reasons therefore are appropriate in assessing a new trial motion and the relation of such acts to a fair trial.