THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE BAILEY, Defendant-Appellant.

(No. 57970; ▮▮▮▮▮▮)

First District (2nd Division)—September 27, 1974.

James J. Doherty, Public Defender, of Chicago (Harold A. Cowen and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Jerald A. Kessler, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

On 25 March 1970, between 3 P.M. and 4 P.M., two men committed an armed robbery of the P. & P. Shopping Center, owned by Charles Patterson, Sr. On 27 October 1970 defendant-appellant was indicted under indictment number 70-3117 for that armed robbery (Ill. Rev. Stat. 1969, ch. 38, par. 18—2). At the bench trial of defendant-appellant, the two principal witnesses for the State were Charles Patterson, Jr., son of the owner of the Shopping Center, and Mattie McClain, who was working in the Center as a clerk on the day of the robbery.

Charles Patterson, Jr., testified that defendant was one of two men who had robbed the P. & P. Shopping Center on 25 March 1970 at about 3 P.M. or 4 P.M., while he and Mattie McClain were working together alone in the store. The witness identified the defendant in court as the man who had put a knife to his throat and had threatened to kill him. The witness testified further that in May of 1970, as he was putting a television set in a station wagon for delivery, a man behind him said: "Why don't you let me have that." The witness recognized the voice as being that of the man who had threatened to kill him, and, when he turned around, he recognized the man as the one who had put a knife to his throat; the man was the defendant. The witness also testified that he had never seen defendant before the day of the robbery.

Mattie McClain testified that, on 25 March 1970 between 3 P.M. and 4 P.M., two men robbed both her purse and the cash register of the P. & P. Shopping Center where she was then working with Charles Patterson, Jr. She identified defendant in court as one of the two men and as the one who had held a knife to the throat of Charles Patterson, Jr., and had threatened to kill him. She testified further that, some weeks after the robbery, Charles Patterson, Sr., her employer and the owner of the Center, had asked her to make sure that a man in a certain automobile who had just been identified by Charles Patterson, Jr., as one of the two robbers, was in fact one of the men. She did then identify the man in the automobile (who was defendant) as one of the two robbers. She testified further that she had seen defendant in the Center about three times before the day of the robbery, and that one of those times had been only a few days before the robbery.

To rebut his identification, defendant and his wife testified that, on 25 March 1970, they were at their home the entire day and had been visited at their home by defendant's sister-in-law, who had remained until 2:30 P.M. In addition, defendant testified that he had been employed to deliver goods for the P. & P. Shopping Center intermittently on a part-time basis for 2 years prior to the date of the robbery. He alleged that he had worked altogether about 9 months for the Center. He further testified that he had met Charles Patterson, Jr., on four or five occasions prior

to the date of the robbery, and that he had delivered televisions and refrigerators for the Center with Charles Patterson, Jr. He further testified that he had seen Charles Patterson, Jr., most recently 3 or 4 days prior to the date of the robbery. He also testified that he had never gotten along well with Charles Patterson, Jr., and that he had had a heated argument with Patterson, Jr., in the month of May after the robbery.

One Gilbert Allen testified on behalf of defendant that he had worked with defendant for the P. & P. Shopping Center on occasions when Charles Patterson, Sr., was short of delivery men. He testified that, on one occasion late in 1968 or early in 1969, he had been delivering a refrigerator with defendant and Charles Patterson, Jr., when defendant had had some words with Patterson, Jr.

In rebuttal of the defense testimony as to defendant's part-time employment, Charles Patterson, Sr., testified that he had never employed defendant. Once in January of 1970, defendant had requested employment, but had not been hired. Gilbert Allen had once been offered a job, but had not accepted the offer. The witness also testified that he regularly employs six persons; that on Sundays he sometimes hires persons off the street as extra delivery personnel; and that his son, Charles Patterson, Jr., sometimes delivers goods for him. On occasion, the witness had obtained part-time help from an employment office.

On 22 April 1971, at the conclusion of the trial testimony, defendant was found guilty of armed robbery. On 4 May 1971, defendant filed a post-trial motion for a new trial in which he offered to bring in newly discovered defense witnesses who would not be either friends or relatives of defendant and who would testify that defendant had worked for the P. & P. Shopping Center prior to the robbery. The trial court denied the motion, for the reason that whether defendant had ever previously worked for the Center was not a principal issue in the case. Defendant was thereupon sentenced to from 3 to 10 years in the Illinois State Penitentiary. This appeal is from the order denying the motion for a new trial.[1]

---

[1] There is some confusion in the appellate briefs as to precisely what order it is from which defendant is appealing. The confusion arises because of a statement in defendant's appellate brief that he is appealing from an order of the trial court denying him a continuance on his post-trial motion for a new trial. The record discloses that defendant's notice of appeal states merely that he is appealing from the judgment of conviction. The record further discloses that, in fact, defendant was allowed one continuance on his motion for a new trial, and that, upon the elapse of that continuance, defendant's motion for a new trial was denied after a hearing. It appears to us that the thrust of defendant's appellate brief is that the error of which he is complaining was the denial of his post-trial motion for a new trial based on his discovery of new evidence. Hence, we accept the State's formulation of the single issue on this appeal as accurate.

■■ As his sole issue on appeal, defendant-appellant (hereafter appellant) contends that he could not reasonably have anticipated the crucial character of testimony that he had previously worked intermittently for Charles Patterson, Sr., and more specifically that he had worked with Charles Patterson, Jr., in delivering items which had been purchased at the Center; and therefore, he could not reasonably have anticipated the necessity of calling the newly discovered witnesses whom he had proffered to call in his post-trial motion for a new trial. The crucial character of their testimony was twofold: if, as they would testify, he had previously worked intermittently for Charles Patterson, Sr., in delivering heavy items purchased at the Center, then (1) his generic credibility would be enhanced to strengthen his credibility as to his alibi defense and to counter the generic credibility of Charles Patterson, Jr., and Mattie McClain; and then (2), had he actually been one of the two robbers, both Charles Patterson, Jr., and Mattie McClain would immediately have recognized him and would have identified him to the police as a former part-time employee of the Center; since neither had done so, he could not have been one of the two robbers, especially in view of his alibi defense. In addition, he suggests that Mattie McClain's identification under the circumstances was affected by her self-interest in retaining her job with Charles Patterson, Sr.

As to the first of the dual thrusts of appellant's proffered new testimony, we agree with the trial court's determination that the testimony was not "central" to the issue of identification. As to the second of the dual thrusts, the obvious flaw in appellant's contention is that he did not allege in his motion for a new trial that the newly discovered witnesses would testify that he had worked with Charles Patterson, Jr., in delivering items for the Center, or that Mattie McClain had ever seen him working for the Center. Hence, he did not allege that any of the newly discovered witnesses would testify that either Charles Patterson, Jr., or Mattie McClain would have been expected immediately to identify him as a former part-time employee of the Center.[2] As a result, the trial court's conclusion that the mere fact of his prior part-time employment by Charles Patterson, Sr., was not "central" to the identification issue in the instant case was correct.

■■ Both the State and appellant agree that appellant's motion for a new trial on the ground of newly discovered evidence is to be considered in light of the criteria set forth by the Illinois Supreme Court in *People v. Baker* (1959), 16 Ill.2d 364, 373-374, 158 N.E.2d 1, 6 (and

---

[2] Appellant has not contended that any such expectation as to Mattie McClain would arise from her merely having seen appellant in the Center on three prior occasions.

recently reiterated in *People ex rel. Walker v. Pate* (1973), 53 Ill.2d 485, 491-492, 292 N.E.2d 387, 392):

> " 'A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge and denial thereof will not be disturbed upon review in the absence of a showing of an abuse of discretion. [Citation.] To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. [Citations.]' "

■■ Moreover, the Supreme Court in *People ex rel. Walker* clearly set forth that the application for a new trial on the ground of newly discovered evidence should be subjected to the closest scrutiny by the court, and that the burden is upon the applicant to rebut the presumption that the verdict is correct and also to show that there had been no lack of diligence.

Appellant has failed to meet this burden in the instant case. The new evidence which appellant purports to have discovered is not of such conclusive character that it will probably change the result on retrial. As pointed out by the trial judge, the question of whether appellant had ever been employed by Charles Patterson, Sr., is not itself of importance to the identification issue. In order even arguably to cast doubt on the State's case as to the identification issue, the newly discovered evidence proffered would have to relate to whether appellant had worked with Charles Patterson, Jr., or had been known to Mattie McClain as an employee; appellant never alleged that he had discovered such evidence. The trial judge was willing to concede that appellant had perhaps done some part-time work for Charles Patterson, Sr., who was himself therefore mistaken in his testimony on that point. But such evidence alone would not necessarily affect the credibility of either Charles Patterson, Jr., or of Mattie McClain.

As to Charles Patterson, Jr., no newly discovered evidence was proffered which casts any doubt upon his ability to observe and identify the man who had put a knife to his throat. The only testimony affecting the credibility of the identification of appellant by Charles Patterson, Jr. (namely, the testimony of appellant that he had quarreled with Charles Patterson, Jr., after the robbery and the testimony of Gilbert Allen that appellant and Patterson, Jr., had once quarreled before the robbery) was already in evidence and had been taken into consideration by the trial judge. In any event, the positive and uncontradicted iden-

tification of appellant by Mattie McClain still stands, affected only by the suggestion of her possible self-interest, which suggestion had already been made. The conclusion is that the proffered newly discovered evidence was obviously not of such conclusive character that it would probably change the result on retrial.

It is unnecessary to consider whether the other criteria for considering newly discovered evidence were met.

For the foregoing reasons, the judgment is affirmed.

Judgment affirmed.

LEIGHTON and DOWNING, JJ., concur.

