THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ELROY BARKSDALE, Defendant-Appellant.

First District (3rd Division)   No. 62491

Opinion filed December 16, 1976.—Rehearing denied January 11, 1977.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

On January 11, 1974, defendant, Elroy Barksdale, was indicted for the crimes of rape and burglary. After being convicted of both crimes at a bench trial, defendant moved for a new trial based upon newly discovered evidence. After a hearing, this motion was ordered denied by the trial court and defendant was sentenced to a term of 4 to 10 years in the Illinois State Penitentiary.

Defendant appeals from the trial court order denying his motion for a new trial and contends that the trial court erred in denying this motion because the newly discovered evidence could have changed the result of the trial.

We affirm.

At trial, the prosecutrix testified that between 7:30 and 8 a.m. the morning of August 19, 1973, as she was asleep in her residence at 8209 South Maryland Avenue in Chicago, a man entered her bedroom and threw a cold rag over her nose and mouth. The man was shaking and told her, "If you make a sound I'm going to kill you." The intruder then pulled the half-slip the victim was wearing over her face to cover her head and told her to walk into the living room where he forced her to bend over a pool table and have sexual intercourse with him. During this act of intercourse, the victim's 18-month-old son walked down the hallway. As the victim glanced back to tell her son to leave, she was able to see the intruder.

After this initial act of intercourse, the intruder told the victim to walk toward the kitchen. As she walked around the pool table into the kitchen, the victim saw the intruder's reflection in a mirror located above her stereo system. The intruder then forced her to lie down on her back on the kitchen floor. Although her slip was over her head, it was daylight and the victim could see her assailant clearly as he bent over her. He kept telling her to turn her head away but she refused. Holding a knife to her throat, the intruder had intercourse with her again. He was on top of her and she was able to look directly at his face during the entire five minutes during which the act occurred.

After the assailant completed this second act of rape, he forced the victim to walk back into the bedroom and fled through the front door. The victim ran to the front door and saw her assailant disappear through a gangway. She called the police who arrived a short time later and drove the prosecutrix through the neighborhood in an unsuccessful attempt to locate the assailant. The police then drove the prosecutrix to the hospital for tests.

The victim went on to testify that the following day she saw her assailant in a candy store near her neighborhood and obtained his name and address from an employee at that candy store. Later that day, the victim went to the 5th District Police Station and observed a lineup. She identified the defendant Barksdale from among five or six persons in that lineup. The victim also identified Elroy Barksdale at trial as the man who had raped her.

Officer Townsend, a Chicago Police Officer, testified that he received a communication at about 7:55 a.m. August 19, 1973, which directed him to the victim's residence. Arriving at her residence, Officer Townsend spoke to the victim who appeared upset and stated that she had been raped. After an unsuccessful search of the neighborhood in an effort to find the offender, Officer Townsend transported the victim to Roseland Community Hospital.

Officer Fiske, another Chicago Police Officer, testified that in the late afternoon on August 20, 1973, he received a communication which

directed him to 8125 South Cottage Grove Avenue. Upon his arrival at that location, Officer Fiske encountered the defendant, the victim's boyfriend, and two police officers. After speaking to the defendant, Officer Fiske placed the defendant under arrest for the crime of rape. At this time defendant stated that he lived at 200 North Pine, but was staying at his sister's home.

After the above testimony, it was stipulated that if the microanalyst who analyzed a smear specimen taken from the victim were to testify he would state that the above specimen showed positive for the presence of spermatozoa. It was further stipulated that defendant's age at the time of trial was 38.

Defendant, Elroy Barksdale, testified at trial that he washed dishes at the Navarone Restaurant in Niles from 7 p.m. August 18 to 5 a.m. on August 19. Because his ride to the train station had fallen through, defendant flagged down the sheriff's police who gave him a ride. Defendant received another ride to the CTA bus terminal on Milwaukee Avenue in Chicago from a Niles police officer. Arriving at the terminal at about 7 a.m., defendant then proceeded by bus to the Armenakis employment agency at Halsted and Madison in Chicago where he slept from 7 a.m. to 10:30 a.m. Defendant then received a job at the Black Steer Restaurant where he worked from 11:30 a.m. until 8 p.m. Defendant returned home to 200 North Pine and went to his sister's home to babysit the next day. On the way to his sister's home, defendant stopped off at a candy store.

Defendant went on to testify that on the afternoon of August 20, two men came to his sister's house and asked him if he had been involved in a rape. After being warned by his sister not to accompany the men, the defendant called the police, who took him to the police station.

Defendant further stated that he had never seen the victim before nor had he ever been on the victim's street, Maryland Avenue. Later defendant admitted having been to 63rd Street and Maryland and further admitted that Maryland Avenue is located directly through the alley from his sister's home.

On cross-examination, defendant stated that he told Officer Duncan, the police officer who conducted the lineup in which defendant was identified, substantially the same thing that he testified to on direct examination concerning his whereabouts on August 18 and 19. Officer Duncan called by the State in rebuttal, denied that the defendant told him anything concerning his whereabouts on August 18 or 19.

After hearing the above testimony and arguments of counsel, the trial court found defendant guilty of both the crimes of rape and burglary.

Defendant then filed a motion for a new trial based upon newly discovered evidence. At the hearing on this motion, Miss Jean Barksdale, defendant's sister, stated that she resided at 8125 South Cottage Grove

Avenue; that on August 19, 1973, defendant was not residing with her; and that sometime after midnight in the very early morning hours of August 19, 1973, defendant telephoned her, told her that he was at work, and asked if he could come over to her house. Miss Barksdale further testified that the defendant arrived at her house in the morning on August 20, 1973, and that prior to the date of the occurrence, it had been two weeks or less since her brother had been at her house. On cross-examination, Miss Barksdale stated that she had spoken with assistant State's Attorney Hettinger, the prosecutor in the instant case, and that she may have told Mr. Hettinger that the defendant lived at her home for a period of three months prior to the time of his arrest. Miss Barksdale further indicated on cross-examination that she had not spoken to the defendant since speaking to Mr. Hettinger.

Also called as a witness for the defense at the hearing on defendant's motion for a new trial was Officer Ben Hermann, a police officer from the Niles Police Department. Officer Hermann stated that between approximately 5 a.m. and 5:30 a.m. (although it could have been earlier or later) he saw the defendant walking along the 8500 block of Dempster Avenue, stopped and gave the defendant a ride to the bus depot at Milwaukee and Devon Avenues. At this time defendant told Officer Hermann that he was going to his home in Chicago.

On cross-examination Officer Hermann said that his log book did not indicate the precise time at which he gave the defendant a ride. He said that he had an incident between 5:50 a.m. and 6:04 a.m., and felt that he gave the defendant a ride prior to this incident. Officer Hermann also testified on cross-examination that he asked the defendant if his home was on the south side of Chicago and that the defendant replied in the affirmative.

The parties then stipulated that if Mr. Armenakis were called to testify on behalf of defendant Barksdale, he would testify that he was in charge of an employment agency located at Halsted and Madison Streets; that the agency's records would indicate that at 5 p.m. on August 18, 1973, the defendant was sent to a job at the Navarone Restaurant in Niles; that at some unknown time the morning of August 19, 1973, defendant was sent to a job at the Black Steer Restaurant on North Avenue; and that the agency's records did not indicate at what time defendant's employment terminated at either restaurant.

The parties further stipulated that if assistant State's Attorney Hettinger were called to testify, he would testify that one evening the week before he spoke to Miss Jean Barksdale; that she told him she remembered that the defendant left her home on August 18, 1973, for the Armenakis employment agency and did not recall seeing her brother on August 19, 1973. The parties further stipulated that two days prior to the testimony of Jean Barksdale, she in fact saw her brother and conversed with him.

After hearing the above testimony the trial judge indicated that the new evidence would not change his finding and ordered that defendant's motion for a new trial be denied.

■■ Defendant's only contention in this appeal is that the trial court erred in denying his motion for a new trial based upon the newly discovered evidence because such evidence if presented at trial could have changed the trial's result. We disagree with this contention and find no error in the trial court's ruling denying defendant's motion for a new trial. In order to warrant a new trial, defendant's new evidence must be of such a conclusive character that it will probably change the result on retrial. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) The burden is upon the applicant to rebut the presumption that the verdict is correct and that the new evidence has been diligently obtained. (*People v. Howze* (1972), 7 Ill. App. 3d 60, 286 N.E.2d 507.) This matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in a case of manifest abuse. *People v. Williams* (1975), 27 Ill. App. 3d 858, 327 N.E.2d 461, *aff'd*, 63 Ill. 2d 371, 349 N.E.2d 14 (1976); *People v. Booth* (1974), 20 Ill. App. 3d 88, 312 N.E.2d 736.

■■ After reviewing the evidence presented at the hearing on defendant's motion for a new trial, we find no manifest abuse of the trial court's discretion in denying defendant's motion, nor do we find the new evidence of such a conclusive character that it would change the result on retrial. Although defendant's sister, Jean Barksdale, did testify that defendant was not at her house the day of the rape, her testimony did conflict with that of defendant in other areas and her credibility was cast into doubt by the stipulation regarding the assistant State's Attorney's testimony. Officer Ben Hermann's testimony, although corroborative of defendant's testimony in part, is of no assistance to defendant. Officer Hermann's testimony concerning the time at which he picked up defendant is consistent with the fact that defendant was at the victim's residence at the time of the occurrence. Particularly damaging to defendant's case is Officer Hermann's statement that defendant replied affirmatively when Officer Hermann asked him if he lived on the south side. Furthermore, the stipulation as to Mr. Armenakis' testimony is of no significance. Mr. Armenakis' records do not indicate at what time defendant left work on August 18 or 19, nor are they corroborative of defendant's testimony that he slept at the agency from 7:30 a.m. to 10:30 a.m. the morning of the rape.

For the above reasons, we affirm the order of the Circuit Court of Cook County denying defendant's motion for a new trial.

Order affirmed.

McNAMARA, P. J., and MEJDA, J., concur.