THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAMONTE REED, Defendant-Appellant.

First District (1st Division)   Nos. 77-1688, 78-1842 cons.

Opinion filed May 5, 1980.

James J. Doherty, Public Defender, of Chicago (Robert F. Nemzin, Alan R. Sincox, and Sam Majerowicz, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, the defendant, Lamonte Reed, was convicted of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) and sentenced to the Illinois State Penitentiary for a term of from five to ten years. His direct appeal has been consolidated with his appeal from the dismissal of his post-conviction petition which alternatively sought relief pursuant to the Illinois Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, par. 122—1 et seq.), section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72), and the Habeas Corpus Act (Ill. Rev. Stat. 1977, ch. 65, par. 1 et seq.). In his direct appeal the defendant contends: (1) that he was not proven guilty beyond a reasonable doubt; (2) that the trial court erroneously allowed the defendant to be impeached on a collateral matter; (3) that the trial court erroneously refused to allow defense counsel to rehabilitate a defense witness after he was impeached by a prior material omission; and (4) that his sentence was excessive. In his post-conviction petition the defendant asserts that the perjury of the complaining witness entitles him to section 72 relief or relief under the Post-Conviction Hearing Act. Relief under the Post-Conviction Hearing Act is also asserted due to both the State's failure to disclose a witness favorable to the defense and the defense counsel's failure to properly investigate the case which the defendant asserts denied his right to effective assistance of counsel. The defendant also sought a new trial under the Habeas Corpus Act on the basis of newly discovered evidence.

We affirm.

The following testimony was given at the trial. According to Terry Weatherspoon, the complaining witness, on August 31, 1975, Jacqueline Miller, Eddleavy Steele, and he left the home of Eddleavy Steel's mother at about 10 p.m. and proceeded west on Garfield Road which is also known as 55th Street. Ms. Miller, Steele's girlfriend, walked ahead of the others because she and Steele had previously had a fight. As

Weatherspoon and Steele approached a bus stop at 55th and Normal they observed three youths. One of them, Lamonte Reed, was a 10-year acquaintance of Weatherspoon, having attended grammar and high school with him. The other two individuals were unknown to him. Weatherspoon testified that he and Steele had proceeded past the bus stop to a viaduct about half a block west of Normal when someone came up from behind them and touched him on the back. When he stopped and turned around he found Lamonte Reed standing there. He was alone. Steele was standing next to him at this time. Reed asked Weatherspoon whether he remembered Reed's having robbed him in grade school and then told him that he was going to rob him now. Reed then pulled a gun from his left side, pointed the gun at Weatherspoon, and demanded that he give him whatever money he had in his wallet. Weatherspoon handed him $40 from his wallet. At this time Reed informed him that if he told anyone about the robbery he would jump him. After the robbery, Weatherspoon walked a short distance and then began running. He ran until he flagged down a police car at which time he told the police officers what happened.

On cross-examination, Weatherspoon stated that, while he assumed Steele had been standing next to him during the robbery, he never looked over at him during the robbery because Reed had a gun pointing at his stomach. He also stated that the defendant held the gun on him with one hand and took the money from him with his other hand. Weatherspoon could not remember whether he had told the police that three men with two blue steel revolvers and a knife robbed him, or that one of the three wore a leather jacket and an earring. Nor could he recall whether he gave a police officer a description of two other robbers, or whether he told an officer that he was told by the defendant to hand over his money or he'd shoot his brains out. However, while he did admit that he had been just a little bit mad that Reed had robbed him while they were in school, he denied having ever gotten into a fight with Reed at anytime in the past.

Eddleavy Steele, also testifying for the State, stated that he and Weatherspoon left his mother's house on the night of August 31, 1975, at approximately 10 p.m. and began walking west on 55th. Jacqueline Miller, his girlfriend, walked in front of them because she was mad at him. As he and Weatherspoon reached the corner of 55th and Normal they met three youths; one of them yelled at Weatherspoon, "that's the punk I used to rob in school." Steele didn't know which of the youths had shouted nor did he know any of the three. He and Weatherspoon kept on walking and soon the three youths began to follow them. As they reached a viaduct one of the three ran up behind Weatherspoon and Weatherspoon stopped. Steele, assuming that Weatherspoon had met a friend, continued walking. He stated that he was unaware that a robbery

was taking place. Shortly thereafter, he turned around to see where Weatherspoon was. He saw him at the viaduct but did not see anyone with him, nor did he see a weapon of any type. A few minutes later Weatherspoon ran past him towards Halsted. When Steele reached 55th and Halsted, Weatherspoon told him that he had been robbed and so they flagged down a squad car.

On cross-examination Steele stated that he did not observe whether any of the three youths had worn a leather jacket or gold earring on the night of the robbery nor did he hear anyone threaten to blow Weatherspoon's brains out if he didn't give him money. Moreover, he did not tell the police that three men robbed Weatherspoon, or that two blue steel revolvers and a knife were used in the robbery. No one had tried to rob him. He admitted that his ability to see Weatherspoon on the night of the robbery while he was standing under the viaduct might have been affected by the fact that there was a street light out under the viaduct. He also testified that Weatherspoon was wearing a straw hat that evening and that he could not remember seeing a bandage on any of the three youths on that occasion.

Officer Frank Parrott testified that on August 31, 1975, at approximately 10:30 p.m. he responded to a dispatch call by going to 55th and Halsted. While there, he and his partner, Officer Nelson, interrogated Weatherspoon and Steele regarding an alleged robbery of Weatherspoon. During this interrogation, Weatherspoon told him that he had been robbed by three individuals, one of whom was Lamonte Reed. Weatherspoon also gave him a description of each offender, stating that one was wearing a black leather jacket, and that all carried a weapon. Moreover, Weatherspoon told him that two blue steel .38 revolvers and a knife had been used in the execution of the robbery. Weatherspoon also told Parrot that one of the offenders had threatened to blow out his brains if he told anyone about the robbery.

Arresting officer Earl Zuelke testified that he arrested the defendant on October 2, 1975, at Mercy Hospital where the defendant was being treated as a patient for a hand injury. After the testimony of Officer Zuelke, the State rested.

Derrick Stevenson, the first defense witness, stated that at 10 or 10:30 p.m. on the night of August 31, 1975, he was with his friends, Sidney Clark and Lamonte Reed, when they encountered Steele and Weatherspoon at the corner of 55th and Normal. At that time Reed made the comment to Clark and Stevenson that "there is that punk kid I used to go to school with." Reed then stomped his feet. Weatherspoon, after looking back at him, ran away. No one tried to rob either Weatherspoon or Steele at this time. Nor did he or any of his friends carry a gun or knife or wear a black jacket or gold earring. He did testify that Reed had a gauze bandage on

his left hand and substantiated Steele's testimony that Weatherspoon was wearing a straw hat that night.

The defendant, testified in his own behalf that Stevenson, Clark, and he had been together on the evening of August 31, 1975, at about 10 or 10:30 p.m. near 55th and Normal when they happened to meet Terry Weatherspoon and Eddleavy Steele walking west on 55th Street. Thereafter, he and his friends began walking west on 55th behind Steele and Weatherspoon. At this time he turned to Stevenson and told him that Weatherspoon was a sissy boy that he had gone to school with. After making this comment, he stomped his feet at which time Weatherspoon turned around, looked at him, and ran away. According to Reed, Weatherspoon's hat fell off at this time. Later, however, when Reed tried to return it, Weatherspoon denied that it was his. Reed denied robbing either Weatherspoon or Steele or that he or any of his friends had a gun or a knife. Reed stated that he had known Weatherspoon for about 10 years and had attended school with him. He said that he had gotten into fights with him during their school days but denied ever robbing Weatherspoon or brandishing a knife or gun during their fights. Reed testified that his left hand was swollen on the night of the 31st and had a gauze bandage on it.

On cross-examination, Reed testified that he was treated at Mercy Hospital during the summer of 1975 for a hand infection which later became abscessed. Dr. Loftus, a specialist, treated his hand during the period of the infection. He also noted that he had two operations on his hand due to the infection: one prior to August 31 and one after that date in September.

Sidney Clark's testimony closely paralleled the testimony · of Stevenson and Reed as to the events of August 31. On cross-examination, counsel for the State read into the record certain of Clark's answers from his preliminary hearing testimony in order to impeach Clark's trial testimony that Reed made a remark to his friends about the defendant and then stomped his feet prior to Weatherspoon running away. At the preliminary hearing Clark had failed to mention either of these facts. On redirect, defense counsel attempted to rehabilitate Clark by asking him whether he was asked at the preliminary hearing if Reed did anything prior to Weatherspoon's flight. The trial court sustained the State's objection to this question. The defense rested at this point.

In rebuttal, the State introduced the testimony of Dr. Krishna Swamy, a resident at Mercy Hospital in September 1975, when Reed was a patient at the hospital for hand surgery. Dr. Swamy testified that he prepared a medical history of Reed at that time. A medical history, according to Swamy, contains information supplied by the patient as to his present and past medical history and constitutes a part of the patient's medical chart. Dr. Swamy testified at trial that, after reviewing the history

and the defendant's medical chart, he found no reference to any operation Reed might have had prior to the September surgery. Moreover, the defendant made no reference to any prior operation to Swamy during the taking of the history. Dr. Swamy admitted on cross-examination that the defendant had received treatment for his hand at Mercy commencing May 23, 1975, but that he had not treated him until his September 1975 hospital stay. The jury returned a verdict of guilty on the armed robbery charge.

## I. Direct Appeal

The defendant initially contends that he was not proven guilty beyond a reasonable doubt because the complaining witness' testimony was incredible and substantially impeached. Material contradictions between Weatherspoon's testimony and other trial testimony as to: the number of men involved in the robbery; the description of the clothing worn by the robbers; whether two steel blue .38 revolvers and a knife were used in the commission of the crime; whether the defendant's left hand was bandaged; and the amount of light at the scene are cited by the defendants.

It has repeatedly been held that a reviewing court in Illinois should not disturb a verdict on appeal where the jury, as trier of fact, has determined the weight and credibility to be afforded a witness' testimony unless the determination is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) It is also well recognized that the testimony of a single, credible witness is sufficient to sustain a verdict even though such testimony is contradicted, provided that the accused is observed under circumstances which would allow a positive identification to be made. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) The pivotal factor in evaluating the identification is whether the witness had an opportunity to view the offender under adequate conditions. (*People v. Donald*; *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688; *People v. Mays* (1976), 38 Ill. App. 3d 182, 347 N.E.2d 235.) Minor conflicts and inconsistencies in testimony do not destroy the credibility of a witness for it is in the province of the trier of fact to resolve such discrepancies. (*People v. Owens*; *People v. Mays*.) Therefore, where identification is positive, precise consistency as to purely collateral matters is not required to establish guilt beyond a reasonable doubt. *People v. Reed*; *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072.

■■ The contradictions in the complaining witness' testimony were not

material. (*People v. Mays* (1980), 81 Ill. App. 3d 1090, 401 N.E.2d 1159; *People v. Jones* (1980), 81 Ill. App. 3d 798, 401 N.E.2d 1325; *People v. Reed*; *People v. McGhee* (1974), 20 Ill. App. 3d 915, 314 N.E.2d 313.) While the conflict between the police testimony and Weatherspoon's testimony as to the number of offenders and the weapons used might be material under other circumstances, we do not feel upon a review of the record that they are material in the present case. Weatherspoon immediately reported the robbery to the police and Reed's role in it. Moreover, Weatherspoon viewed the defendant under circumstances which later permitted him to make a positive identification. While Steele testified that he could not clearly see what occurred under the viaduct from where he stood because of poor lighting, this does not weaken Weatherspoon's identification. Weatherspoon stood no more than a few inches from the defendant, someone he had known for approximately 10 years, during the commission of the robbery. Weatherspoon's identification is further buttressed by the fact that it is unrefuted that Reed was in the vicinity of the viaduct and by the fact that Steele testified that Reed did come up behind Weatherspoon and that the two had some type of interaction at the viaduct. This clearly substantiates Weatherspoon's testimony and refutes the defense testimony that Reed, Clark and Stevenson were together at the time that Weatherspoon ran past Steele.

We believe that the jury could have found Weatherspoon's testimony to be of sufficient quality to support the defendant's conviction. Weatherspoon was acquainted with the defendant (see, *e.g., People v. Horobecki* (1977), 48 Ill. App. 3d 598, 363 N.E.2d 1; *People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 329 N.E.2d 262) and observed him for a sufficient time under sufficient lighting conditions. See, *e.g., People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318.

■■ The defendant urges that the defendant's testimony was improbable and contrary to human experience because, if the robbery occurred as Weatherspoon testified, then it occurred in close proximity to three people who either deny that a robbery took place or that they were aware of it. We do not agree. First, the testimony of the defendant's friends is highly suspect because of their relationship with the defendant. Second, although Steele was not a great distance from the viaduct at the time of the robbery, that distance, when taken in conjunction with poor lighting, can reasonably account for Steele's failure to realize that a robbery was in progress.

The defendant next asserts that the trial court erred in allowing him to be impeached as to a collateral matter on cross-examination and by Dr. Swamy's rebuttal testimony. We agree with the defendant that it is improper to allow a witness to be impeached as to collateral matters.

(*People v. Steptore* (1972), 51 Ill. 2d 208, 281 N.E.2d 642; *Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 316 N.E.2d 191; *People v. McGhee* (1974), 20 Ill. App. 3d 915, 314 N.E.2d 313.) Moreover, we agree with the defendant that the subject matter of the instant impeachment was collateral under the definition of "collateral" utilized by the Illinois Supreme Court in *People v. Pfanschmidt* (1914), 262 Ill. 411, 104 N.E.2d 804, and more recently by the court in *Steptore*. However, after reviewing the entire record we cannot conclude that reversible error was committed. As noted previously, the complaining witness' testimony was sufficient evidence upon which to base the conviction. *People v. Gant* (1974), 58 Ill. 2d 178, 317 N.E.2d 564; *People v. Hastings* (1979), 72 Ill. App. 3d 816, 390 N.E.2d 1273.

▪▪ Nor do we find that the trial court's refusal to allow the defense counsel to rehabilitate Clark constituted reversible error. It appears that *People v. Hicks* (1963), 28 Ill. 2d 457, 192 N.E.2d 891, and *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644, relied upon by the defendant, support his position that the trial court should have allowed the rehabilitation of Clark. In *Hicks*, the complaining witness testified that the defendant had been in possession of a coat and knife on the day of the alleged rape. At the trial the defendant testified that he had not been in possession of the articles because they were in a locked hotel room. However, in an earlier suppression hearing he testified that he was not locked out until two days after the rape. The trial court refused to allow the defendant's counsel to rehabilitate him by explaining the conflicting testimony. On appeal the supreme court reversed, stating that:

> "* * * it was clearly of considerable importance to ascertain whether these articles had been locked up prior to that time so that the defendant could not have had access to them. In view of the importance of this testimony, we believe that the interests of justice require that the judgment of conviction be reversed * * * so that the defendant will be afforded every opportunity of explaining or reconciling his inconsistent testimony." (28 Ill. 2d 457, 463.)

The inconsistency between Clark's preliminary hearing testimony and his trial testimony is not as serious an inconsistency as that which the supreme court in *Hicks* held warranted reversal. In light of the clear identification evidence in the record, we find this error to be harmless.

▪▪ The defendant also urges that his sentence of five to 10 years was excessive. Generally, the imposition of a sentence is a matter of judicial discretion. Therefore, it will not be altered on review absent an abuse of discretion by the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Cortez* (1979), 77 Ill. App. 3d 448, 395 N.E.2d 1177.) This rule is based upon the fact that the trial judge is best able to

evaluate those factors necessary to determine what punishment is appropriate because he has had the opportunity to determine the defendant's credibility, demeanor, general moral character, morality, social environment, habits, and age. *People v. Perruquet; People v. Dukett* (1974), 56 Ill. 2d 423, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.

The defendant argues that the trial court abused its discretion in sentencing him to a minimum term of imprisonment greater than the four-year minimum term required by the statute because it improperly considered his refusal to admit guilt and because it ignored his rehabilitation potential. (Ill. Rev. Stat. 1975, ch. 38, pars. 18—2(b), 1005—8—1(c)(2).) Section 5—8—1(c)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(2)) allows a trial court to set a higher minimum term than is required by Statute if it determines that such a sentence is warranted due "to the nature and circumstances of the offense and the history and character of the defendant." The trial judge's statements at the sentencing hearing indicated that he based his decision to impose the higher minimum term on the defendant's commission of the armed robbery, against a person whom he had known for a number of years, at night, when viewed in conjunction with the defendant's background. These facts suggested to the trial court that the defendant would need a greater than normal period for rehabilitation. The supreme court in *Perruquet* held that the trial court should consider not only the rehabilitative potential of the defendant, but also punishment. In reviewing the record, we do not find that the trial court's reference to the defendant's refusal to admit his guilt nor his failure to impose a lower sentence based on the defendant's attendance of junior college, reveals an abuse of discretion in light of the fact that the trial court did consider the nature of the offense and the defendant's background in setting his sentence as required by section 5—8—1. Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1.

## II. Collateral Appeal

The defendant contends that Terry Weatherspoon perjured himself by his trial testimony and that, as the affidavits of Leona and Eddleavy Steele contained specific allegations of this perjury, the trial court erred in denying an evidentiary hearing on the defendant's post conviction petition for relief pursuant either to the Habeas Corpus Act (Ill. Rev. Stat. 1977, ch. 38, par. 122—1 *et seq.*) or section 72 of the Civil Practice Act. The availability of post-conviction relief for perjury under either act depends upon the defendant's showing that adequate grounds for relief exist. (*People v. Jennings* (1971), 48 Ill. 2d 295, 269 N.E.2d 474; *People v. Dean* (1975), 28 Ill. App. 3d 196, 328 N.E.2d 130.) It is obvious that the

initial question in such a proceeding is whether sufficient allegations of perjury have been shown. The mere allegation of perjury is insufficient. (*People v. Jennings.*) Rather, the defendant must present clear factual allegations of perjury and not mere conclusions or opinions. It should be noted, however, that in determining whether the trial court properly dismissed a petition, all well-pleaded facts in the defendant's petition and accompanying affidavits will be treated as admitted. (*Withers v. People* (1961), 23 Ill. 2d 131, 177 N.E.2d 203.) Where the defendant's post-conviction petition presents a question of fact based on the record, an evidentiary hearing should be held (*People v. Hilliard* (1978), 65 Ill. App. 3d 642, 382 N.E.2d 441); however, where the trial court had everything before it which it needed to rule on the petition, then no evidentiary hearing is required. (*People v. Dean; People v. Ortiz* (1974), 22 Ill. App. 3d 788, 317 N.E.2d 763.) It is also clear that the denial of an evidentiary hearing is discretionary and will not be reversed absent a manifest abuse of discretion. *People v. Stanley* (1972), 50 Ill. 2d 320, 278 N.E.2d 792; *People v. Dean.*

After reviewing the instant petition and accompanying affidavits in light of the former principles, we find that the affidavits of Leona and Eddleavy Steele did not present factual allegations sufficient to support the defendant's charge of perjury, although they do serve to attack Weatherspoon's credibility. The affidavit of Leona Steele states that Weatherspoon informed her that he could not contribute any money towards the cost of the barbecue held at her home on the day of the robbery because he had no money. Mrs. Steele stated that she believed that Weatherspoon was telling the truth about not having any money because in the past he had always helped pay for his share of the food and drinks. In the affidavit, Mrs. Steele also stated that immediately after the robbery Terry and her son, Eddleavy, told her that they had told the police that a boy robbed them and that they were going to get some money out of him. Terry, at this time, told her that "he was tired of the boy bothering him." Later, she talked to Terry and told him that if Reed was in jail for something he didn't do that he should let him out. Terry replied that "it was too late and that since Lamonte Reed had been bothering with him all this time, he was supposed to be in jail."

The State asserts that Weatherspoon's statement to Leona Steele that he had no money could simply have been for the purpose of avoiding paying for his share of the cost of the barbecue. Therefore, the State contends the statements do not clearly establish perjury. We agree. The statements are mere conclusions and are therefore not well pled. Nor do we find Weatherspoon's statements to Leona Steele concerning the robbery and Reed's having bothered him in the past such that they clearly substantiated the defendant's assertion that a robbery never occurred.

The statements are ambiguous in nature. At most, the statements indicate that Weatherspoon was determined to continue to cooperate with the State in the prosecution of the defendant's case. His reasons are unclear. Accordingly, they do not support an allegation of perjury.

Similarly, Eddleavy Steele's statement in his affidavit that Weatherspoon had no paper money on the day of the alleged robbery on the basis of Weatherspoon's statements to him and on a glimpse that he had of Weatherspoon's wallet is equally insufficient to support the allegation of perjury. If it was Weatherspoon's purpose to avoid contributing to the cost of the Steele's barbecue, then it is consistent that he should tell the same story to his hostess and her son. The flaw in Eddleavy's affidavit is that it is also conclusory in nature.

■■■ The defendant urges that the trial court should not have dismissed the defendant's post-conviction petition without a hearing. As already noted, the affidavits failed to present clear factual allegations of perjury and, therefore, the petition was properly dismissed. (*People v. Jennings* (1971), 48 Ill. 2d 295, 269 N.E.2d 474; *People v. Hilliard* (1978), 65 Ill. App. 3d 642, 382 N.E.2d 441.) However, even had the allegations presented well-pled facts, the trial court would have been justified in dismissing the petition without an evidentiary hearing because the trial court, having heard the trial testimony, could have resolved the issue of fact raised as to the perjury by considering Weatherspoon's credibility, the trial record, and the affidavits. (*People v. Dean* (1975), 28 Ill. App. 3d 196, 328 N.E.2d 130; *People v. Ortiz* (1974), 22 Ill. App. 3d 788, 317 N.E.2d 763.) In this regard, the present case is distinguishable from *People v. Hilliard* where this court concluded that an evidentiary hearing should have been held because the trial judge could not resolve the issue of fact raised as to the perjury of the sole eyewitness to a murder because he had not heard the witness testify at trial. While holding that an evidentiary hearing should have been held on the allegations of perjury of the eyewitness, the court rejected the defendant's assertion that an evidentiary hearing should have been held to resolve an issue of fact raised as to another witness' perjury. The court found the affidavits alleging the second perjury consisted "in large part of conclusions of fact rather than statements of fact" and, therefore, did not raise an issue of fact of perjury. The present affidavits are similar, not to the eyewitness' affidavit which presented a clear allegation of perjury but rather to the conclusory affidavits rejected by the court in *Hilliard*.

The defendant next asserts a constitutional violation in the State's failure to inform the defendant that Leona Steele was a favorable defense witness as required by *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. The defendant, on the basis of *People v. Dixon* (1974), 19 Ill. App. 3d 683, 312 N.E.2d 390, contends that Mrs. Steele's

testimony was "favorable" under the dictates of *Brady* in that it would have impeached Weatherspoon's already severely contradicted testimony and could well have induced the jury to acquit the defendant. Accordingly, the defendant asserts that the State was under an obligation to inform the defense that Mrs. Steele was a potential witness. We do not agree.

We have read the cases cited by the defendant and find them clearly distinguishable from the facts of the present case. Here, the value of Mrs. Steele's potential testimony was questionable because of its ambiguous and conclusory nature. Moreover, even if her testimony would have attacked the complaining witness' credibility, there is nothing in the record to indicate that the State or the police were aware of Mrs. Steele's potential worth as a witness for the defense. Mrs. Steele's affidavit indicates that she told an unnamed police officer and an unnamed State's Attorney that her son and Weatherspoon were lying about the robbery. However, our review of the affidavit indicates that her statements to the police officer and State's Attorney were sufficiently ambiguous that either could have failed to recognize the import of what the defense now contends to be her testimony. Moreover, in light of the clear and credible nature of Weatherspoon's identification of the defendant, we do not find that whatever impact this testimony might have had on the jury would have affected its outcome. Therefore, we find no error in the trial court's denial of an evidentiary hearing on this issue.

The defendant also asserts that his retained counsel's ineffective representation violated his due process rights, specifically alleging that his counsel failed to interrogate any of the State's witnesses or Dr. Gerald Loftus, the defendant's hand specialist. The defendant contends that had his counsel interviewed Eddleavy Steele he would have found out that Weatherspoon had no money on the night of the robbery and would have learned that Leona Steele was a potential witness. Dr. Loftus' questioning, according to the defendant, would have deprived the State of its only impeachment of the defendant, the testimony as to the number of operations performed on the defendant's hand.

The standard for determining whether retained counsel's representation is inadequate is whether:

> "* * * the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham." (*People v. Torres* (1973), 54 Ill. 2d 384, 391, 297 N.E.2d 142; accord, *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.)

In evaluating whether retained counsel's representation was such that it denied a defendant a fair trial, matters of judgment, discretion, or trial tactics are not reviewable. (*People v. Murphy*; *People v. Bland* (1978), 67

Ill. App. 3d 716, 384 N.E.2d 1380.) Nor does the fact that in hindsight another attorney might have handled the case differently or that the jury rejected the defendant's defense indicate the incompetency of the trial counsel. *People v. Dean* (1975), 28 Ill. App. 3d 196, 328 N.E.2d 130.

■■ We do not believe, after reviewing the record, that counsel's investigation fell below that required for a fair trial or that the trial court erred in dismissing the defendant's petition without an evidentiary hearing, as the trial court could clearly ascertain the sufficiency of counsel's representation from the record and the attached affidavits. (*People v. Dean; People v. Ortiz* (1974), 22 Ill. App. 3d 788, 317 N.E.2d 763.) Ineffective representation does not result unless there is actual incompetence and substantial prejudice without which the outcome would probably be different. (*People v. Dean* (1964), 31 Ill. 2d 214, 201 N.E.2d 405; *People v. Bland* (1978), 67 Ill. App. 3d 716, 384 N.E.2d 1380.) Consequently, whether counsel's failure to interrogate witnesses turns the trial into a sham or farce depends upon the value of the evidence which might have been obtained and the closeness of the case. (*E.g., People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.) As already noted, the ambiguous and speculative nature of Eddleavy and Leona Steele's affidavits would not have affected the outcome of the jury. Nor do we find that the affidavit of Dr. Loftus indicates that his testimony would have affected the verdict. Dr. Loftus' affidavit only indicates that Reed's hand may have been swollen on the date of the robbery. We do not think that the failure of defendant's counsel to interrogate Loftus would have produced a different result in light of the strength of the identification evidence. Accordingly, we find no validity to the defendant's argument that he was denied a fair trial by the ineffective representation of his retained counsel.

■■ The defendant's last argument is that he is entitled to a new trial under the Habeas Corpus Act, on the basis of the newly discovered evidence indicated in Mrs. Steele's affidavit. We find no merit in this argument. In order for newly discovered evidence to warrant a new trial it must:

> " '* * * be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. [Citations.]' " (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 492, 292 N.E.2d 387; accord, *People v. Bailey* (1974), 22 Ill. App. 3d 670, 318 N.E.2d 228.)

As the affidavit of Leona Steele afforded no such conclusive evidence that it would have changed the result on retrial, the trial court's decision to

1044

deny a new trial was not manifestly erroneous. *People ex rel. Walker v. Pate*; *People v. Williams* (1976), 39 Ill. App. 3d 449, 350 N.E.2d 135; *People v. Barksdale* (1976), 44 Ill. App. 3d 821, 358 N.E.2d 1202.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook county sentencing the defendant to a term of from five to 10 years and the order denying the defendant's post-conviction petition.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.