THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES LLOYD *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—89—0297

Opinion filed December 28, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, James E.

Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

Sam Adam, of Chicago, for appellees.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

The subject of this appeal is an order granting defendants, Charles and Mario Lloyd, relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*) based upon the trial court's finding that defendants had been deprived of the right to a fair trial. The court concluded that defendants' attorney was faced with a conflict of interest because he also represented two other codefendants whose defenses were antagonistic to that of defendants. The State has appealed, contending that the court erred in granting defendants a new trial because defendants have failed to show that an actual conflict of interest was manifested at trial and that their attorney's representation was adversely affected as a result. We reverse the decision of the trial court.

Defendants, Charles and Mario Lloyd, and codefendants, Johnny Beard and Lionel Bell, were charged by indictment with calculated criminal cannabis conspiracy (Ill. Rev. Stat. 1983, ch. 56½, par. 709) and with possession of cannabis with the intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 705). The indictment specifically alleged that these offenses were committed on October 22, 1983. At trial, all four defendants were represented by the same assistant public defender, and all four waived their rights to trial by jury. Following the joint bench trial, Beard was acquitted of all of the charges set out in the indictment, and Bell was acquitted of the cannabis conspiracy charge but was convicted of possession of cannabis with the intent to deliver. Charles and Mario Lloyd were convicted of both offenses, and each received a term of six years for possession with intent to deliver and a concurrent term of five years for the calculated criminal cannabis conspiracy charge.

Represented by the public defender, defendants filed a direct appeal of their convictions. Thereafter, the public defender withdrew from the case, and defendants retained private counsel who brought a petition for post-conviction relief (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*), asserting that defendants had been deprived of their constitutional rights to a fair trial and to effective assistance of counsel. The direct appeal of defendants' convictions was stayed pending resolution of the post-conviction proceedings.

Review of the trial record reveals that the State presented the testimony of several police officers establishing that at approximately 5:30 p.m. on October 22, 1983, Bell was observed motioning to cars as they drove past the building located at 5624 South Damen Avenue in Chicago, Illinois. When the cars stopped, Bell approached them and gestured toward the alley at either end of the block. The cars were then driven toward either end of the block and entered the alley. These events were repeated five or six times. While this occurred, defendant Mario Lloyd came to the front of the building several times, spoke to Bell, and then entered the gangway leading to the rear of the building.

The officers' testimony established further that as automobiles or pedestrians entered the alley and neared the garage behind 5624 South Damen Avenue, they were approached by Mario or Charles Lloyd, who then went into the garage and returned with small manila envelopes. The small envelopes were subsequently handed to the pedestrian or automobile occupant in exchange for money. On one occasion, Charles Lloyd was observed in the garage holding a white bag from which he retrieved an envelope which he handed to Mario. Mario then gave the envelope to a person seated in an automobile.

After the officers observed several of these transactions, they arrested defendants, Bell, and a woman who was also on the scene. The arresting officers recovered $2,967 from Mario Lloyd and $765 from Charles Lloyd. In the garage behind 5624 South Damen Avenue, the officers recovered a white plastic bag which contained a large brown bag. Inside the brown bag were 135 manila envelopes, each containing a substance which was later tested and found to be cannabis, weighing a total of 545.80 grams.

Although Beard was not observed on the scene and was not arrested with the other three defendants on October 22, 1983, the State presented the testimony of Officer Mary Hodge, who stated that while working undercover, she purchased cannabis from Beard on several occasions during September, October, and November 1983. During one such transaction, Bell was also present. Hodge testified that she made similar purchases of cannabis from Bell and Mario Lloyd during September and October 1983.

Officer Claude Posilovich testified that he commenced the investigation into the defendants' activities in late August 1983. In September 1983, Posilovich and Beard became friendly by speaking Italian to each other. Beard subsequently offered Posilovich money in exchange for police protection of the cannabis operation and for police harassment of a competing operation located nearby. After meeting with his

brothers, Mario and Charles Lloyd, Beard offered Posilovich $200 per week for police protection. Posilovich also received $300 from Beard as payment for advance warning that a search warrant for Beard's residence would be executed.

Posilovich met with Beard, Charles Lloyd, and Mario Lloyd on September 22, 1983. On September 28, 1983, Posilovich met with Beard, Bell, and Charles Lloyd. After this meeting, Posilovich communicated with Beard and the Lloyds through telephone conversations which were recorded, but he had no contact with them between October 14, 1983, and November 3, 1983. On November 3, 1983, Posilovich met with Bell and Beard, who told him that he no longer trusted Posilovich and that he did not want Posilovich to protect his business any longer. Beard stated further that he was still the boss and that the police were too stupid to get him personally.

Assistant State's Attorney Joseph McNerney testified that on December 6, 1983, he met with Lionel Bell. McNerney indicated that after Bell was advised of his *Miranda* rights, Bell stated that he had been working with Beard, Mario Lloyd, and Charles Lloyd for several years. Bell stated further that he regularly accompanied Charles Lloyd when he purchased between three and five pounds of cannabis for eventual sale to the public. Bell also indicated that the cannabis sales operation grossed approximately $4,000 per day, with a profit of about $1,000 which Beard split with his girlfriend.

Defense counsel twice objected to the introduction of McNerney's testimony repeating Bell's statements. The trial court held that McNerney's testimony regarding Bell's statements was admissible but would be considered only as evidence against Bell and would not be considered against the other defendants.

The parties stipulated that if called as a witness, Assistant State's Attorney Edward Petrucha would testify that on December 2, 1983, he met with Mario Lloyd. Petrucha would testify further that after Mario Lloyd was advised of his *Miranda* rights, he stated that he and his brothers, Charles Lloyd and Johnny Beard, had been involved in cannabis sales since the latter part of 1981. Petrucha would state that Mario Lloyd identified Bell as one of his workers and stated that the cannabis found in the garage by the police belonged to him and to his brothers.

After the State rested its case, defense counsel moved that all charges against both Johnny Beard and Lionel Bell be dismissed, arguing that the State had failed to present any evidence that Bell directed or organized the cannabis operation and that Beard's conduct on other occasions prior or subsequent to October 22, 1983, had noth-

ing to do with the acts charged in the indictment. The trial court granted the motion on behalf of Lionel Bell for a finding of not guilty on the calculated criminal cannabis conspiracy charge, but denied defense counsel's motion on behalf of Johnny Beard. The defense then rested its case as to all defendants without presenting any evidence.

After closing arguments, the court found Lionel Bell, Mario Lloyd, and Charles Lloyd guilty of possession of cannabis with the intent to deliver. After additional argument, the court found Charles and Mario Lloyd guilty of calculated criminal cannabis conspiracy based upon the evidence establishing that they organized and controlled the sale of cannabis on October 22, 1983, in conjunction with Lionel Bell.

The trial court also found that although Lionel Bell was clearly a participant in the continuing sale of cannabis with the other defendants, he did not direct, organize, or control the conspiracy. Accordingly, Bell was acquitted of the calculated criminal cannabis conspiracy charge. As to Johnny Beard, the court found that although there was ample evidence indicating that he was involved in a conspiracy to sell cannabis, there was no showing that he had any knowledge, control or direction for the sale of cannabis on October 22, 1983. Consequently, the court found defendant Beard not guilty of either possession with intent to deliver or of calculated criminal cannabis conspiracy.

The post-conviction petition filed by defendants Mario and Charles Lloyd alleged that they were deprived of their constitutional rights to a fair trial and to effective assistance of counsel. The petition claimed that defense counsel faced a conflict of interest because in addition to defendants Mario and Charles Lloyd, he also represented Beard and Bell, whose interests were antagonistic to those of the Lloyds. The petition asserted that as to the cannabis conspiracy charge, Bell and Beard had an interest in establishing that they were merely workers and that the Lloyds organized, directed, and controlled the cannabis operation. Specifically, the petition alleged that defense counsel's arguments and cross-examination of the State's witnesses were predominately focused on exculpating Beard and Bell, rather than providing effective and loyal representation for the Lloyds.

The State moved to dismiss the post-conviction petition, asserting that defendants had failed to establish that an actual conflict of interest was manifested at trial and that defense counsel's representation was adversely affected as a result. At the hearing on the post-conviction petition, the trial judge stated that Beard and Bell had been acquitted on the cannabis conspiracy charge because they were not the

directors of the operation. Upon review of the transcript of the joint bench trial over which he had presided, the trial judge held that there was an actual conflict in the multiple representation of the Lloyds in addition to Bell and Beard. Accordingly, the court granted defendants a new trial.

The State has appealed, contending that the trial court erred in granting the Lloyds a new trial where the court's decision was based upon unsupported and speculative allegations of a conflict of interest. We agree.

■■ It is well established that a petitioner seeking post-conviction relief bears the burden of setting forth in what respect his constitutional rights were violated and providing support for his allegations with affidavits, references in the record, or other evidence. (*People v. Newberry* (1973), 55 Ill. 2d 74, 302 N.E.2d 34; *People v. Ford* (1981), 99 Ill. App. 3d 973, 426 N.E.2d 340.) Thus, a petitioner who seeks relief from his conviction in such a proceeding must allege facts which, if proven, would show that his constitutional rights were violated. See *People v. Reed* (1980), 84 Ill. App. 3d 1030, 405 N.E.2d 1065; *People v. Hoffman* (1974), 25 Ill. App. 3d 261, 322 N.E.2d 865.

Although defendants asserted and the trial court stated that the conflicting interests of the defendants precluded defense counsel from adequately representing the Lloyds as well as Beard and Bell, no facts have been presented which would show in what way the trial was unfair.

■■ ■ An accused is entitled to the undivided loyalty of his counsel, and an attorney is precluded from representing conflicting interests or undertaking the discharge of inconsistent obligations (*People v. Washington* (1984), 101 Ill. 2d 104, 110, 461 N.E.2d 393, 396), and an attorney's representation of multiple defendants with conflicting interests constitutes a denial of the fundamental right to effective assistance of counsel (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457). A defendant must show with some specificity that an actual conflict of interest manifested at trial and that his counsel's representation was adversely affected as a result. *People v. Spreitzer* (1988), 123 Ill. 2d 1, 18, 525 N.E.2d 30, 36-37; *People v. Jones* (1988), 121 Ill. 2d 21, 28, 520 N.E.2d 325, 328.

The Lloyds claim that as to the cannabis conspiracy charge, their defenses were antagonistic to those of Bell and Beard. They argue that Bell and Beard had an interest in establishing that they were merely workers and that the Lloyds organized, directed, and controlled the cannabis operation. The Lloyds assert further that Bell and

Beard could concede that a conspiracy existed and still escape conviction of the conspiracy charge as long as they established that they were only workers or that the Lloyds were in positions of management.

We note, however, that Bell and Beard did not concede that a conspiracy existed, nor did the attorney representing them, and they presented no evidence at trial which implicated the Lloyds. Thus, what they could concede or might have conceded is immaterial and does not establish an actual conflict of interest which adversely affected the representation by defense counsel.

The Lloyds also allege that defense counsel's arguments and cross-examination of the State's witnesses were predominately focused on exculpating Beard and Bell, rather than providing effective and loyal representation for the Lloyds.

The fact that the evidence against one defendant is stronger than the evidence against another defendant is not of itself sufficient ground for a severance. (*United States v. Hendrix* (7th Cir. 1985), 752 F.2d 1226, 1232.) Just as this circumstance would not establish a ground for severance, it is insufficient to establish a conflict of interest among the defendants. In granting the Lloyds a new trial, the trial court specifically referred to the "irreconcilable defenses raised" by the defendants. We cannot agree with the trial court's conclusion that "irreconcilable defenses" were raised where none of the defendants testified or presented any evidence at trial.

The trial court specifically held that McNerney's testimony regarding Bell's statements was admissible but would be considered only as evidence against Bell and would not be considered against the other defendants. In addition, Mario Lloyd's own statement to Petrucha indicated that he and his brothers, Charles Lloyd and Johnny Beard, had been involved in cannabis sales since the latter part of 1981. Mario Lloyd identified Bell as one of his workers and stated that the cannabis found in the garage by the police belonged to him and to his brothers.

There is nothing in the record to indicate that the court in this case relied upon Bell's post-arrest statement to convict the Lloyds. The court specifically stated that it would consider the statement only against Bell and not against the other defendants. We must presume that the trial court considered only competent evidence unless the contrary affirmatively appears in the record. (*People v. Schmitt* (1989), 131 Ill. 2d 128, 138-39, 545 N.E.2d 665, 669.) Under these circumstances, we do not believe that the Lloyds have established that an actual conflict of interest manifested at trial or that their attor-

492

ney's representation was adversely affected as a result.

Moreover, we find no basis in the record for the trial court's decision to grant the Lloyds a new trial on the charge of possession of cannabis with the intent to deliver.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

McNAMARA and EGAN, JJ., concur.